IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TONJI WHITE,

                    **Plaintiff,**

        v.                                              **1:07-cv-01739-WSD**

CITY OF ATLANTA;
SHIRLEY FRANKLIN, Mayor of
the City of Atlanta;
RICHARD PENNINGTON, Chief of
the Atlanta Police Department;
STUART KELLMAN, individually
and in his capacity as an Atlanta
police officer;
ROBERT MOODY, individually;
and
JOHN DOES 1 THROUGH 5,

                    **Defendants.**

_____

## OPINION AND ORDER

This matter is before the Court on the Motions to Dismiss filed by defendant
Robert Moody ("Moody") [9] and defendants the City of Atlanta, Shirley Franklin,
in her capacity as Mayor of the City of Atlanta, Richard Pennington, in his capacity
as Chief of the Atlanta Police Department, and Stuart Kellman, individually and in
his capacity as an officer in the Atlanta Police Department (collectively, the "City
Defendants") [13].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Tonji White's ("Plaintiff") Amended Complaint alleges as follows:[1]
On August 27, 2005, Plaintiff was driving a reportedly stolen car through Atlanta.
A chase by law enforcement ensued.  After Plaintiff struck a utility pole, law
enforcement officers forcibly removed Plaintiff from the vehicle.  Plaintiff alleges
she was placed on her back in a grassy area adjacent to the vehicle and was
repeatedly tasered on her stomach by law enforcement officers.  Plaintiff alleges to
have been unarmed and dazed from the car wreck at this time.  Plaintiff  alleges she
was then handcuffed, rolled onto her stomach, and shot in the buttocks.  Plaintiff
alleges defendant Kellman, an Atlanta Police officer, defendant Moody, a Georgia
State Trooper, and several other unidentified officers participated in her arrest.
Plaintiff alleges to have been tasered by several "police officers" and to have been
shot "by one of the police officers on the scene, believed to be either Defendant

---

[1] Plaintiff filed her original complaint on July 25, 2007 [1].  On September
26, 2007, Plaintiff moved to amend her complaint [18].  The Court granted
Plaintiff's motion to amend on October 25, 2007 [28].

Kellman, Defendant Moody, or one of the John Doe Defendants."  Amend. Compl. ¶¶ 9-10.[2]

## II.    DISCUSSION

Federal Rule 12(b)(6) permits litigants to move to dismiss complaints which fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court accepts plaintiff's allegations as true and construes the complaint in plaintiff's favor.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (internal quotation marks omitted).  The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

The pleading requirements of the Federal Rules of Civil Procedure normally require only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "provide his opponent with 'fair notice of what [his] claim is and the grounds upon which it

---

[2] Plaintiff originally sought declaratory or injunctive relief against all defendants.  Plaintiff has since withdrawn her plea for declaratory or injunctive relief.  Pl.'s Resp. to State Defs.' Mot. to Dismiss [16] at 12.

rests.'" <u>Parker v. Brush Wellman, Inc.</u>, 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

The Eleventh Circuit applies "a heightened pleading standard to § 1983 actions brought against individuals to whom qualified immunity is available as a defense." <u>Lawson v. Curry</u>, No. 07-10474, 2007 WL 2287820, at *1 (11th Cir. Aug. 10, 2007) (citing <u>Swann v. S. Health Partners, Inc.</u>, 388 F.3d 834, 838 (11th Cir. 2004)). "'[W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim.'" <u>Id.</u> (quoting <u>GJR Invs. v. County of Escambia</u>, 132 F.3d 1359, 1367 (11th Cir. 1998)); <u>accord</u> 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1230 n.20 (2007); <u>Maldonado v. Snead</u>, 168 Fed. Appx. 373, 379-80 (11th Cir. 2006). "Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims." <u>Id.</u> "[I]n multiparty [§ 1983] litigation, 'the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of *each* defendant giving rise to [his]

claims.'" <u>Jamison v. City of Forsyth</u>, No. 5:06-cv-399 (CAR), 2007 WL 1231663,

at *1 (M.D. Ga. Apr. 26, 2007) (quoting <u>Parker</u>, 377 F. Supp. 2d at 1294)

(emphasis in original).

**A.     <u>State Defendants' Motion to Dismiss</u>**

Pursuant to the Court's October 25, 2007 Order [28], the only remaining

State Defendant is defendant Moody, who is sued in his individual capacity.

Plaintiff alleges against Moody unconstitutional excessive force and state law tort

claims for assault, battery, intentional infliction of distress, and punitive damages.

**1.     <u>Qualified Immunity and Claims for Excessive Force</u>**

Federal law permits plaintiffs to bring civil actions against persons who,

"under the color of any statute, ordinance, regulation, custom, or usage, of any

State . . . subjects . . . any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws . . . ." 42

U.S.C. § 1983.  Plaintiff claims violations of the Fourth and Fourteenth

Amendments.  The core of her allegations is a claim for excessive force in

violation of the Fourth Amendment.[3]

---

[3] The Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28
U.S.C. §§ 1331, 1343(a)(3).  <u>Ortega v. Schramm</u>, 922 F.2d 684, 690 (11th Cir.
1991).

"Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); accord Lee v. Ferraro, 284 F.3d

1188, 1193-94 (11th Cir. 2002). "The purpose of this immunity is to allow

government officials to carry out their discretionary duties without the fear of

personal liability or harassing litigation, protecting from suit all but the plainly

incompetent or one who is knowingly violating the federal law." Lee, 284 F.3d at

1194 (internal citations and quotation marks omitted).

For qualified immunity to apply, a defendant must first prove that he acted

"within the scope of his discretionary authority" during the allegedly wrongful

acts.  Id.[4]  If the defendant proves that he acted within the scope of his

discretionary authority, the plaintiff bears the burden to show that qualified

_____

[4] An official performs a "discretionary function" when his acts "but for the
alleged constitutional infirmity, would have fallen within his legitimate job
description," and the acts were done "through means that were within his power to
utilize." Holloman v. Harland, 370 F.3d 1252, 1265-66 (11th Cir. 2004).  Georgia
courts routinely find that an officer's conduct in arresting a suspect is discretionary.
E.g., City of Atlanta v. Heard, 555 S.E.2d 849, 853 (Ga. App. 2001); Woodward v.
Gray, 527 S.E.2d 595, 600 (Ga. App. 2000).

immunity is not appropriate.  Id.  The Supreme Court has established a two-part qualified immunity test.  First, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether a plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Second, "[d]espite their participation in this constitutionally impermissible conduct, [defendants] may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Hope, 536 U.S. at 739 (quoting Harlow, 457 U.S. at 818).

"A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is 'apparent.'"  Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005).  This standard does not require that the specific conduct in question has been previously found to be unlawful.  Id. (citing Hope, 536 U.S. at 741).   "'The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Vinyard, 311 F.3d at 1350 (quoting Saucier, 533 U.S. at 202) (emphasis in original).

-7-

"'The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest.'"  <u>Vinyard</u>, 311 F.3d at 1347 (quoting <u>Lee</u>, 284 F.3d at 1197); <u>accord</u> <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989).  The question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer.  <u>Graham</u>, 490 U.S. at 396-97; <u>Lee</u>, 284 F.3d at 1197.  "Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting <u>Graham</u>, 490 U.S. at 394).  A court "must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal."  <u>Crosby v. Monroe Cty.</u>, 394 F.3d 1328, 1334 (11th Cir. 2004).

Georgia courts have routinely held that actions taken during an arrest fall within a police officer's discretionary authority.  <u>E.g.</u>, <u>Heard</u>, 555 S.E.2d at 853; <u>Holloman</u>, 370 F.3d at 1265-66.  Defendant Moody's alleged actions were indisputably taken within the scope of discretionary authority he was granted.

Defendant Moody argues that the allegations against him are insufficient to state a claim because Plaintiff does not allege with specificity who tasered or shot her.  The Court agrees.

Plaintiff's Amended Complaint does not satisfy the heightened pleading burden imposed by this Circuit in § 1983 actions against individuals who may be able to assert qualified immunity.  Her Complaint broadly and unspecifically alleges that one of seven officers shot her.  Because she was circumstantially prevented from seeing her shooter, she deducts that at least one of the people had to have been responsible for her injury.[5]

Plaintiff's allegations are plainly insufficient, particularly in light of the heightened pleading requirements in § 1983 actions in this Circuit.  Plaintiff must allege her claims with "some specificity" and "some factual detail," including the requirement that she allege the "conduct of *each* defendant giving rise to [her] claims."  Parker, 377 F. Supp. 2d at 1294 (emphasis in original); see also Wilkes v. Clayton County, Ga., No. CIVA 1:05CV3074GET, 2006 WL 1992613, at *2 (N.D.

---

[5] This pleading theory, taken to its logical conclusion, would mean that when a plaintiff cannot identify a particular officer who inflicts an injury alleged to have been suffered, she may sue any officer who was present, regardless of the number of officers at the scene.

Ga. July 14, 2006) ("In order to withstand a motion to dismiss, a complaint alleging a violation pursuant to Section 1983 must plead a constitutional deprivation of rights [and] that a specific defendant caused the violation . . . ."). The requirement of heightened specificity for § 1983 actions where officers may have qualified immunity acts to protect police officers from "the fear of personal liability or harassing litigation," Lee, 284 F.3d at 1194, at least until the plaintiff alleges with specificity the unconstitutional acts an officer has personally committed.  Plaintiff has not alleged her § 1983 claims with the specificity required by 11th Circuit precedent.[6]

The John Doe defendants must be dismissed for similar reasons. "[F]ictitious party practice is not permitted in federal court . . . ." New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997).  While courts have sometimes made exceptions when the plaintiff may be able to describe an individual without stating his or her name precisely, Plaintiff has not provided any description of the John Doe defendants in this case.  See Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of

---

[6] There may be other pleading strategies available to Plaintiff that were not employed in the Amended Complaint.

the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service).  John Does 1 Through 5 are required to be dismissed.

District courts have the inherent authority to order more definite statements under Fed. R. Civ. P. 12(e).  Fikes v. City of Daphne, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996).  Courts often require more definite statements of plaintiffs who fail to plead § 1983 claims with the specificity required by the 11th Circuit.  E.g., Williams v. Marengo County Sheriff's Dept., No. 06-0368-WS-M, 2007 WL 521010, at *1 (S.D. Ala. Feb. 15, 2007); Jamison, 2007 WL 1231663, at *2. Plaintiff here will be given the opportunity to amend the pleading deficiencies identified in this Order.  Specifically, Plaintiff shall have up to and including January 4, 2008 to file a second amended complaint.  If a further amended complaint is not filed, Defendants' motions to dismiss the § 1983 claims will be granted.

-11-

## 2.   <u>State Law Tort Claims</u>[7]

The Georgia Tort Claims Act ("GTCA") provides a limited waiver of sovereign immunity for torts committed by state employees.  O.C.G.A. § 50-21-23(a).  "The GTCA provides the exclusive remedy for any tort committed by a state officer or employee within the scope of his or her official or employment duties."  <u>Wang v. Moore</u>, 544 S.E.2d 486, 489 (Ga. App. 2001); <u>accord</u> O.C.G.A. § 50-21-25(a).  "A state officer or employee who commits a tort while acting within the scope of his or her duties or employment is not subject to a lawsuit or liability therefor.  However, nothing in this article shall be construed to give a state officer or employee immunity from suit and liability if it is proved that the officer's or employee's conduct was not within the scope of his or her official duties or employment."  O.C.G.A. § 50-21-25(a).  Persons bringing tort claims against the State must name the State of Georgia as a party defendant, and tort claims against state officials or employees must name as a party defendant the state agency for which the official or employee was acting.  <u>Id.</u> § 50-21-25(b).

---

[7] The Court can exercise supplemental jurisdiction over Plaintiff's state law claims if they are part of the same case or controversy as her federal claims.  28 U.S.C. § 1367(a).  Without any federal claims, however, the Court lacks jurisdiction to hear state claims absent diversity jurisdiction.  Amend. Compl. ¶¶ 1-3; <u>see</u> 28 U.S.C. § 1332.

The Eleventh Amendment bars private suits in federal court against a State or any state agencies or departments, absent waiver by the state or a valid congressional abrogation of the state's sovereign immunity.  U.S. Const. amend. XI.  "'[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'"  Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984)).  The State of Georgia has specifically preserved its Eleventh Amendment sovereign immunity for private tort claims brought in federal court against it and its departments, agencies, officers, or employees.  O.C.G.A. § 50-21-23(b); Ga. Const. Art. I, § 2, ¶ 9(f); Gamble v. Fla. Dept. of Health and Rehabilitative Servs., 779 F.2d 1509, 1511-20 (11th Cir. 1986).[8]

---

[8] The GTCA waives sovereign immunity only over suits brought in courts of the State of Georgia; "The state [of Georgia] does not waive any immunity with respect to actions brought in the courts of the United States."  O.C.G.A. § 50-21-23(b); see also id. § 50-21-28 ("All tort actions against the state under this article shall be brought in the state or superior court of the county wherein the loss occurred; provided, however, that, in any case in which an officer or employee of the state may be included as a defendant in his individual capacity, the action may be brought in the county of residence of such officer or employee.").

Plaintiff's tort claims brought individually against defendant Moody are barred by the GTCA and the Eleventh Amendment.  The GTCA is the "exclusive remedy" for tort claims brought against officials and employees of the State of Georgia acting within the scope of their employment.  O.C.G.A. § 50-21-25(a).  As a Georgia State Trooper, Amend. Compl. ¶ 2, defendant Moody is indisputably an employee of the State of Georgia.  Plaintiff herself alleges that Moody's conduct was within the scope of a Georgia State Trooper's official duties.  Id. ¶ 14 ("The actions of . . . Defendant Moody . . . were state actions or committed under the color of state law."); see also Mattox v. Bailey, 472 S.E.2d 130 (Ga. App. 1996) (affirming trial court's dismissal of a state law battery claim against a Georgia correctional officer while reversing the trial court's dismissal of the plaintiff's excessive force claim against the same officer).  Plaintiff's claims for assault, battery, intentional infliction of emotional distress, and punitive damages claims alleged against defendant Moody are required to be dismissed.

**B.    City Defendants' Motion to Dismiss**

Plaintiff's Amended Complaint alleges unconstitutional excessive force against the City of Atlanta, Shirley Franklin, in her official capacity as Mayor of the City of Atlanta, Richard Pennington, in his official capacity as Chief of the

Atlanta Police Department, and Stuart Kellman, individually and in his official capacity as an officer in the Atlanta Police Department.  Plaintiff also alleges claims against defendant Kellman in his individual capacity for assault, battery, intentional infliction of emotional distress, and punitive damages.  Plaintiff alleges negligence against the City of Atlanta, Mayor Franklin, and Chief Pennington for negligent hiring, retention, and training of defendant Kellman.

"Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978)); accord Smith v. Allen, 502 F.3d 1255, 1271-72 (11th Cir. 2007).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. at 166.

Plaintiff's claims against Mayor Franklin and Chief Pennington are "official capacity" claims.  Plaintiff has not alleged any individual action of Mayor Franklin or Chief Pennington that could subject them to liability.  Plaintiff's only allegations against these defendants claim violations related exclusively to their official duties.

-15-

Those claims are deemed to be asserted against the City of Atlanta, Monell, 473 U.S. at 165-66, and the Court dismisses Mayor Franklin and Chief Pennington as defendants in this action.  Similarly, the claims asserted against defendant Kellman in his official capacity also are required to be dismissed.[9]

For the same reasons discussed above, Plaintiff's excessive force claim individually against defendant Kellman fails to meet the heightened pleading standard applied in § 1983 cases.  Plaintiff alleges merely that Kellman was on the scene when she was shot.  Plaintiff shall have up to and including January 4, 2008 to satisfy the heightened pleading requirements.

The City Defendants' brief on their motion to dismiss does not address the state law claims against Kellman individually for assault, battery, intentional infliction of emotional distress, or punitive damages.  Official immunity embedded

---

[9] Municipal police officers acting within their official capacities at the time of the alleged offenses are generally entitled to official immunity from individual liability.  Williams v. Solomon, 531 S.E.2d 734, 736 (Ga. App. 2000); Sommerfield v. Blue Cross & Blue Shield of Ga., Inc., 509 S.E.2d 100 (Ga. App. 1998); Pearson v. City of Atlanta, 499 S.E.2d 89 (Ga. App. 1998) (affirming grant of summary judgment dismissing state tort and § 1983 claims against the City of Atlanta and an agent of the Atlanta police department).  Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption" or negligence.  Sommerfield, 235 S.E.2d at 102(1); accord Ga. Const., Art. I, § II, ¶ IX(d).

in the Georgia Constitution cannot be waived, and the Court notes that Kellman can be found individually liable for intentional torts only if he acted with "actual malice or with actual intent to cause injury."  Ga. Const., Art. I, § II, ¶ IX(d). Plaintiff has alleged that Kellman "intentionally and maliciously assaulted and battered" her and "intentionally, maliciously, and outrageously" inflicted emotional distress on her.  Amend. Compl. ¶¶ 17, 19.  Because Plaintiff facially has alleged "actual malice" or "actual intent," and in absence of any argument by the City Defendants to the contrary, Plaintiff's state law tort claims against Kellman survive this motion to dismiss.[10]

The remaining claims against the City of Atlanta seek to hold the City liable for defendant Kellman's allegedly excessive force and for negligent hiring, training, and retention, both claims arising under § 1983.[11]  "[A] municipality

---

[10]  The Court notes, however, that its jurisdiction over this suit is predicated upon federal question jurisdiction over Plaintiff's constitutional claims.  If the federal claims are dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).

[11]  Plaintiff seems to allege that the City Defendants are liable to her for their negligence in hiring, training, and supervising defendant Kellman.  Plaintiff also appears to claim this cause of action as a § 1983 claim against the City Defendants for unconstitutional customs or policies leading to defendant Kellman's alleged use of of force.  Whether her "negligence" claim arises under § 1983 or state law is not clear.  Several allegations in the Amendment Complaint lead the Court to conclude

cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original); accord Young v. City of Augusta, Ga., 59 F.3d 1160, 1171 (11th Cir. 1995); Kentucky v. Graham, 473 U.S. at 168. The excessive force claim against the City of Atlanta is therefore dismissed.

As for the negligence claim against the City, the plaintiff must show "a direct causal link between a City policy or custom and the alleged constitutional deprivations." Young, 59 F.3d at 1171 (citing City of Canton, Oh. v. Harris, 489 U.S. 378, 385 (1989)). A plaintiff alleging an unconstitutional city policy may establish the policy either through identification of (1) an officially-promulgated city policy, or (2) an unofficial custom or practice of the city shown through repeated acts of a policymaker. Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

---

that Plaintiff's claim for negligence is a § 1983 action for violation of her right to due process under the Fourteenth Amendment. E.g., Amend. Compl. ¶¶ 1 (Plaintiff seeks remedies for violations of the Fourth and Fourteenth Amendments), 13 ("Defendants' unconstitutional actions were made pursuant to or according to the custom or policy of [the City Defendants] . . . and were therefore state actions, or committed under the color of state law. Moreover, [the City Defendants] failed to adequately and properly train or discipline Defendant Kellman . . . ."). The Court therefore analyses Plaintiff's negligence claim under § 1983 standards and precedent.

-18-

Plaintiff has not met this minimal pleading burden.  Plaintiff has not alleged any specific City custom or policy in her Complaint.  She alleges instead that because Kellman injured her, then the City must be at fault for negligently hiring, training, and retaining Kellman – yet Plaintiff points to no specific policy or custom that allegedly caused her harm.  This is not sufficient to state a claim under even the minimal standards of Fed. R. Civ. P. 8(a).  Plaintiff shall be given the opportunity to amend this claim up to and including January 4, 2008.

**III.   CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that State Defendant Moody's Motion to Dismiss [9] is **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** defendant Moody's motion to dismiss the claims for assault, battery, intentional infliction of emotional distress, and punitive damages.  The Court also **DISMISSES** John Does 1 Through 5.

**IT IS HEREBY FURTHER ORDERED** that City Defendants' Motion to Dismiss [13] is **GRANTED IN PART** and **DENIED IN PART**.  Defendants Mayor Shirley Franklin and Chief Richard Pennington are **DISMISSED**.

Plaintiff's excessive force claim against the City of Atlanta is **DISMISSED**.  All claims against Defendant Kellman in his official capacity are **DISMISSED**.

Plaintiff shall be allowed up to and including **January 4, 2008** to amend her complaint to meet the heightened pleading standards for § 1983 claims.  If an amended complaint is filed, Plaintiff shall provide the Court with a red-lined copy of the amended complaint identifying to the Court the specific changes to the Amended Complaint that is considered in this Order.

**SO ORDERED** this 19th day of December 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE